WILFORD S. SMITH *vs.* ELLA S. SMITH.

*Divorce— Witness—Letter Carrier—Government Officer—Public Policy—Privileged Communication—Criminating Answer.*

During the taking of testimony by the commissioner in a divorce proceeding, a government official—letter carrier—was asked certain questions about delivering letters to the respondent. The witness refused to answer on two grounds: (1) Because the knowledge received as such official was privileged and it would be against public policy to disclose it. (2) Because answers to the questions would incriminate the witness and subject him to penalty under the postal regulations.

Application was made to the Superior Court for an order to compel the witness to answer; whereupon the Court made an order that the witness answer the questions before the commissioner.

(*Dec. 11, 1899.*)

JUDGES SPRUANCE and GRUBB sitting.

*Robert G. Harman* for plaintiff.

*Peter L. Cooper, Jr.,* for defendant.

Superior Court, New Castle County, November Term, 1899.

DIVORCE.

At the taking of the testimony in the above stated case before the Commissioner, Baldwin T. Springer, Esq., J. Albert Oliver, letter carrier, a witness produced and sworn on behalf of the complainant, was asked by Mr. Harman certain questions, which the witness declined to answer, although held to be admissible by the Commissioner, the witness stating that he believed it to be against the postal regulations, and that he had been so advised by the United States District Attorney for the District of Delaware. The questions were as follows, viz:

(*a*) Q. Have you, during the time you have been letter

carrier had for delivery any letters addressed to Mrs. Smith and by you delivered to Mrs. Smith ?

(b)   Q.   When you went to the door of Mrs. Smith's residence with a letter addressed to her, how long about, to the best of your judgment, did you have to wait generally before the door was opened ?

(c)   Q.   When you went to the door of Mrs. Smith's house to deliver letters addressed to her, were or were there not times when no one at all came to the door ?

(d)   Q.   Did or not Mrs. Smith say to you not to deliver any of her letters at her house, unless she was there, or Miss Faust was there ?

(e)   Q.   Did not Mrs. Smith say to you to deliver letters to her in person, and when she was not at home, not to leave them at the house, but to take them to Miss Faust?

(f)   Q.   Have you or have you not kept and carried in your pocket, or in your possession for three or four days at a time, letters addressed to Mrs. Smith, when you did not find her at home, when you went to her house ?

(g)   Q.   Did or did not Mrs. Smith at times meet you in the vicinity of Seventh and Franklin, sometimes at the back gate and get from you at those points, letters addressed to her ?

Upon the refusal of the witness to answer any of the above questions, Mr. Harman made application to the Superior Court to compel the witness to answer said questions, or to commit him for contempt.

*Mr. Cooper* contended that the witness was not obliged to answer the questions because he was and is an official of the United States Government, in the capacity of letter carrier, and that any knowledge he receives as letter carrier, or as an official of the United States, is privileged and he is not obliged to disclose it and that public policy requires that he should not disclose it (*State vs. Brown and Swan*, *2 Marvel*, *297*); also because the answer to the questions by the witness would incriminate the wit-

ness and subject him to penalty under the postal regulations, if answered in the affirmative.

*United States Postal Laws and Regulations, 204, Sec. 462 ; Rev. Statutes of the United States, Sec. 161.*

*Mr. Harman :*—We have simply this to say : That if the objection be based upon the grounds or principles of public policy, it has absolutely no applicablility at all, because it does not come within the well established common law rule of that admitted principle of law. The State of Delaware is supreme in everything and consequently in regard to its rules of evidence, excepting as there may be limitations found either in the Constitution of the United States, the acts of Congress, the treaties of peace entered into by the United States with foreign countries, and the Constitution of our own State. There is certainly nothing in any of these, giving the privilege contended for. There are some postal regulations bearing upon this matter, which are very wise regulations, designed to prevent letter carriers from becoming scandal mongers, and that is all. These regulations have absolutely no binding force in the State of Delaware; and we respectfully contend that the common law alluded to by the attorney for the respondent in this case is as follows :

*Greenleaf on Evidence, 250, Sec. 1 :*—" On a like principle of public policy, the official transactions between the heads of the departments of State and other subordinate officers are in general treated as privileged communications."

We respectfully contend that this is not between the head of any department of State and its subordinate officers, but even to this admitted principle of law there is the following exception :

*Greenleaf on Evidence,* same section :—" But communications though made by official persons are not privileged, when they are not made in the discharge of any public duty, such for example as a letter by a private individual to the chief secretary of the Post-

master-General, complaining of the conduct of the care of the mail trains and passengers."

The Court made the following order :

And now to wit, this 11th day of December, A. D. 1899, upon the motion of the counsel of the complainant, and after hearing the counsel of the respective parties, it is ordered and adjudged that the said J. Albert Oliver, a witness on behalf of the complainant, do answer before the said Commissioner, Baldwin Springer, the following questions marked *a, b, c, d, e, f* and *g,* heretofore propounded to the said witness and which he then refused to answer.